UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JO ANN FEIKES,

    Plaintiff,

v.

CARDIOVASCULAR SURGERY
ASSOCIATES PROFIT SHARING PLAN,
TRUST, et al.,

    Defendants.

2:04-cv-1724-LDG-GWF

**<u>ORDER</u>**

Plaintiff Jo Ann Feikes filed this ERISA action to recover benefits allegedly denied by defendants' improper handling and distribution of her share in a profit sharing plan. The parties have filed cross-motions for summary judgment and numerous supplemental briefs. For the reasons stated herein, the court grants in part and denies in part the parties' renewed cross-motions for summary judgment on plaintiff's claims regarding periodic distributions and interest prior to the 2001 rollover distribution.

**I. Standard of Review**

A grant of summary judgment is appropriate only where the moving party has demonstrated through "the pleadings, the discovery and disclosure materials on file, and any affidavits" that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir. 2000). The burden then

shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.* The party opposing summary judgment "must cite to the record in support of the allegations made in the pleadings to demonstrate that a genuine controversy requiring adjudication by a trier of fact exists." *Taybron v. City & Cnty. of San Francisco,* 341 F.3d 957, 960 (9th Cir. 2003). If the non-moving party meets its burden, summary judgment must be denied. Fed. R. Civ. P. 56 (c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

Courts review ERISA determinations "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If de novo review applies, the court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Opeta v. Northwest Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (internal citations omitted). Where a plan gives an administrator or fiduciary "discretionary authority as a matter of contractual agreement, the standard of review shifts to abuse of discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).

To qualify as a discretion-granting plan, "the ERISA plan [must] unambiguously grant discretion to the administrator." *Id.* at 963. Although no specific plan language is necessary, language that confers either the right to determine eligibility for benefits or the power to "construe terms of the plan" is sufficient to grant discretionary authority. *Firestone*, 489 U.S. at 111, 115. The 1991 Plan grants discretionary authority. *See* Doc. 37, at 19:1-5; Doc. 61, at 7:16-19. Therefore, abuse of discretion is the default standard of review under Firestone and Abatie.

Under an abuse of discretion standard, a plan administrator or fiduciary's decision must be upheld "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).

2

"An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Id*. (internal citations and quotations omitted) A finding is clearly erroneous "when although there is evidence to support it, the reviewing [court] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Products of California, Inc. v. Constr. Laborers Pension Trust for Southern California*, 508 U.S. 602, 622 (1993) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Although Firestone requires "abuse of discretion review whenever an ERISA plan grants discretion," courts must conduct an abuse of discretion review "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie*, 456 F.3d at 967. Thus, where "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Hinman v. John Alden*, No. CV-1070-PK, 2010 WL 466155, at *5 (D. Or. Feb. 8, 2010). Additionally, a conflict of interest "is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." *Abatie*, 458 F.3d at 972. Accordingly, this court applies an abuse of discretion review with a moderate level of skepticism.

Plaintiff claims that "according to the Ninth Circuit, even if a plan grants discretion, de novo review is compelled under various circumstances . . . each applicable to this case." Plaintiff's Brief of De Novo Review at 1:14-19. In earlier briefing plaintiff admitted that "[abuse of discretion] would apply but for the self-interest conflict which could have influenced the Trustees." Doc. 37, at 19:3-4. As clarified in *Abatie*, however, "[a]buse of discretion review applies to a discretion-granting plan even if the [fiduciary] has a conflict of interest." *Abatie*, 458 F.3d at 965. In post-*Abatie* briefing, plaintiff now essentially contends that de novo review is appropriate

because defendants failed to exercise discretion and committed serious procedural violations that altered the essence of the parties' relationship.  Central to these issues is plaintiff's claim that defendants used the wrong plan to determine her 2001 rollover distribution.  This claim, however, has no bearing on plaintiff's claims regarding periodic distributions and interest prior to the 2001 rollover distribution.

## II. Periodic Distributions

Plaintiff argues that defendants Daugharthy and Perry violated their fiduciary duties under ERISA § 404(a) [hereinafter as 29 U.S.C. § 1104(a)] by "ignoring [Plaintiff's] written [distribution] instructions for each of the six up market years [1992, 1995, 1996, 1997, 1998, and 1999]," Pl.'s Renewed Mot. 5, "making distributions earlier than requested to avoid paying [Plaintiff] net gains in those years," *id.*, and failing to explain to Plaintiff the material features and relative values of her distribution options.  *Id*. at 6.   Plaintiff alternatively argues that she is entitled under 29 U.S.C. § 1132(a)(1)(B) to benefits deprived her by early periodic distributions. Plaintiff also argues that, contrary to plan language, she was denied five percent interest on those distributions. Defendants argue that they did not violate any fiduciary duties by paying Plaintiff's distributions early, that Plaintiff was not entitled to interest, and that, in any event, Plaintiff's claims are foreclosed by the relevant statutes of limitations and principles of equity.  Because an analysis of early distribution payments and failure to pay interest involve distinct legal standards, the court analyzes these claims separately.

**A. Early Distribution Payments**

ERISA claims based on breach of fiduciary duty are subject to an ERISA-specific limitations period.  *See* 29 U.S.C. § 1113(a) (2010); *see also Flanagan*, 3 F.3d at 1252 ("By its terms, the provision applies only to a claim which alleges a breach of fiduciary duty.").  The statute of limitations applicable to Plaintiff's claims provides:

4

> (a) No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . .

29 U.S.C. § 1113(a). "The statute of limitations itself indicates a two-step analysis of accrual of an ERISA action" based on breach of fiduciary duty. *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 550 (9th Cir. 1990). A court first must determine when the alleged "breach or violation" occurred, and then, if necessary, when Plaintiff had "actual knowledge" of the "breach or violation." *Id.*

Each alleged "breach or violation" occurred when defendant fiduciaries' issued early payment of plaintiff's requested distribution. Plaintiff argues that early payment of her requested distributions deprived her of year-end net gains in six years, conflicted with the terms of the plan and personally benefitted defendant fiduciaries by increasing their own accounts, and therefore, constituted a breach of fiduciary duties under 29 U.S.C. § 1104(a)(1)(D). Section 1104(a)(1)(D) provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan . . . ." 29 U.S.C. § 1104(a)(1)(D). Although plaintiff is not entirely clear how early payment of her requested distributions conflicted with plan documents, it is clear that any breach of fiduciary duties occurred upon issuance of each early distribution payment. *See Meagher v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988) ("Each check issued to him . . . constitutes a fresh breach by the trustees of their duty to

administer the pension plan in accordance with the documents and instruments of the Plan . . . as required by 29 U.S.C. § 1104(a)(1)(D)."). Each early payment constituted a separate cause of action and "the limitations period runs separately for each cause of action." *Id*. Plaintiff brought suit more than six years after the alleged fiduciary breaches in years 1992, 1995, 1996, and 1997. This court, therefore, finds Plaintiff's fiduciary claims relative to distribution payments in these years barred under the more lenient six-year limitations period found in 29 U.S.C. 1113(1). Furthermore, because these claims are untimely, a determination of Plaintiff's "actual knowledge" with regard to these transactions is unnecessary and this court must only determine when Plaintiff gained "actual knowledge" relative to the 1998 and 1999 distribution payments.

   Plaintiff had "actual knowledge" of the alleged "breach or violation" when she received each early distribution. A claimant obtains "actual knowledge" when she learns of a transaction, not when she learns that such a transaction may constitute a "breach or violation." *See Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985) ("The statute of limitations is triggered by [Plaintiff's] knowledge of the transaction that constituted the alleged violation, not by [her] knowledge of the law."). Each time Plaintiff received an early distribution she had "actual knowledge" of the transaction, even if she did not know that each early distribution potentially constituted a "breach or violation." *See Meagher*, 856 F.2d at 1423 ("Thus, the issuance of each check commenced a six-year period and Meagher's receipt of the check commenced a three-year period."). Plaintiff brought suit more than three years after acquiring "actual knowledge" of the facts constituting Defendants' alleged fiduciary breaches in years 1998 and 1999. This court, therefore, finds Plaintiff's claims relative to early distribution payments in years 1998 and 1999 barred under the three-year limitations period found in 29 U.S.C. § 1113(2).

   Plaintiff unsuccessfully attempts to save her claims by appealing to the ERISA-specific limitations tolling period. Plaintiff argues that her delay resulted from Defendants' "own failure to provide documents" sufficient for her to deduce a violation of fiduciary duties. As an exception to

the general limitations periods discussed above, claims based in "fraud or concealment" may not be commenced "later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.  This "tolling provision applies to cases in which a plaintiff can prove that a defendant 'made knowingly false misrepresentations with the intent to defraud the plaintiffs,' or took 'affirmative steps' to conceal its own alleged breaches." *Kanawi v. Bechtel Corp.*, 590 F. Supp.2d 1213, 1225-26 (N.D. Cal. 2008) (citing *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995) (per curiam)).  Thus, "[Plaintiff] must show that [Defendants] engaged in affirmative acts intended to conceal a breach of fiduciary duty separate from the breach of fiduciary duty itself." *Kanawi*, 590 F. Supp.2d at 1226.  Plaintiff has failed to produce evidence sufficient to prove Defendants "knowingly [made] false misrepresentations" or engaged in "affirmative acts intended to conceal" these alleged breaches of fiduciary duty.  *Id*. at 1225-26.  Plaintiff merely claims that Defendants never provided summary annual reports, and that she could not have learned of Defendants' breaches without that information.  However, Plaintiff's bare allegations are insufficient to invoke the "fraud or concealment" tolling provision.  *See, e.g.*, *Schaefer v. Arkansas Med. Soc.*, 853 F.2d 1487, 1491-92 (8th Cir. 1988) ("[Section] 1113 incorporates 'the fraudulent concealment doctrine, which requires that plaintiffs show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) they were not on actual or constructive notice of that evidence, despite (3) their exercise of due diligence.'"). Furthermore, Plaintiff's "actual knowledge" of the early distribution payments undermines any tolling argument based on "fraud or concealment."  Plaintiff's distribution requests specifically stated that "as soon as administratively practicable on or after December 31, [year] (the "distribution date"), in the form I hereby elect. I understand my election is revocable until the distribution date."  Plaintiff suggests that she "believed, in error, that December 31st was the first available distribution date for each plan year."  Thus, by requesting distributions "as soon as administratively practicable on or after December 31," Plaintiff claims that she believed that her

1  distributions would include any applicable year-end gains.  However, all but two of Plaintiff's
2  contested distributions were issued before December 31.
3     Even under Plaintiff's mistaken understanding of year-end distributions, she would have
4  had reason to know that distributions issued prior to December 31 would not include year-end
5  gains.  Plaintiff certainly gained "actual knowledge" when she received each distribution issued
6  prior to her requested distribution date, the date on which she believed year-end gains would be
7  added.  *See Pierce Cnty. Emps. and Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E. No. 1450*,
8  827 F.2d 1324, 1328 (9th Cir. 1987) ("A cause of action accrues, and the statute of limitations
9  begins to run, when a plaintiff knows or has reason to know of the injury that is the basis of the
10 action.").  Therefore, the ERISA-specific limitations period bars each of Plaintiff's breach of
11 fiduciary duty claims regarding early distribution payments.
12    Plaintiff's claims for benefits based on the early distributions are similarly barred.  No
13 specific federal statute of limitations governs claims for benefits under an ERISA plan.  *Wetzel v.*
14 *Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 646 (9th Cir. 2000).
15 Courts analogize an ERISA action for benefits to a breach of written contract action and
16 accordingly apply the relevant state statutory contract limitations period.  *Flanagan*, 3 F.3d at 1252
17 (applying Washington's six-year statute of limitations for contract claims to an ERISA plan
18 participant's claims for benefits made against the plan).  Nevada's six-year limitation for contract
19 claims is the relevant period for Plaintiff's claims to recover benefits under the terms of the plan.
20 *See* N.R.S. 11.190(1)(b) (2003).
21    Although Nevada's six-year limitations period applies to Plaintiff's claims for benefits, this
22 limitations period begins upon accrual of each cause of action.  *Pierce Cnty.*, 827 F.2d at 1328.
23 Accrual of an ERISA cause of action is determined under federal law.  *Wetzel*, 222 F.3d at 649 (9th
24 Cir. 2000).  Under federal law, "a cause of action accrues, and the statute of limitations begins to
25 run, when a plaintiff knows or has reason to know of the injury that it is basis of the action."  *Id*.
26

"An ERISA cause of action accrues either at the time benefits are actually denied or when the [beneficiary] has reason to know that the claim has been denied." *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006). "A participant need not file a formal application for benefits before having 'reason to know' that his claim has been finally denied." *Id*.

Plaintiff brought suit more than six years after the distributions in years 1992, 1994, 1995, 1996, and 1997. For the reasons explained above, Plaintiff had "reason to know" when she received each distribution issued prior to her requested distribution date. Because Plaintiff received early distributions in years 1995 and 1997, and because Plaintiff brought suit more than six years following each of these distributions, these claims are barred pursuant to Nevada law. Plaintiff's claims for years 1992, 1994, 1996, 1998, and 1999, however, are not similarly barred. Plaintiff's distributions in years 1992, 1994 and 1996 were not paid early, but rather, according to the terms of her written requests. Thus, unlike the early 1995 and 1997 distributions, the timing of the 1992, 1994 and 1996 distributions is not alone sufficient to initiate the limitations period. Furthermore, Plaintiff brought suit within six years of her early distributions in years 1998 and 1999. Therefore, this court finds untimely Plaintiff's claims for benefits in years 1995 and 1997.

Defendants did not abuse their discretion with regard to Plaintiff's distributions in 1992, 1994, and 1996. Plaintiff's distributions in these years, in contrast to 1997 and 1998, were issued according to the terms of her written distribution requests. Defendants did not abuse discretion by distributing Plaintiff's benefits according to her written requests.

Even though these distributions were issued in accordance with Plaintiff's written distribution requests, Plaintiff maintains that she was deprived of her benefits because Defendants breached their fiduciary duties by failing to advise her of the "resulting harm" of her requests. *See* Plaintiff's Claim for Benefits at 3. In 1992, Plaintiff requested distribution "as soon as administratively practicable on or after December 18, 1992 (the "distribution date") . . . ." In 1994 and 1996, Plaintiff requested distribution "as soon as administratively practicable on or after

December 31 (the "distribution date") . . . ." Plaintiff insists that "distribution date" in her requests refers to "the first available distribution date for each plan year [i.e., January 1st]." Thus, Plaintiff reasons that she is yet entitled to benefits because "the Trustee never explained to Mrs. Feikes that December 31st was not a 'distribution date' under the Plan nor that the first distribution date following Mrs. Feikes' requests was actually the immediately following January 1st." *Id*. Generally, "an ERISA fiduciary has both a duty not to make misrepresentations to plan participants, and an affirmative duty to inform when the [fiduciary] knows that silence might be harmful." *In re Computer Sciences Corp. ERISA Litig.*, 635 F. Supp.2d 1128, 1139 (C.D. Cal. 2009) (citations omitted); *see also Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007) ("[A] fiduciary has a duty to inform when it knows that silence may be harmful, and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits.") (internal citations omitted). However, the language of Plaintiff's distribution requests does not support the conclusion that Defendants knew or should have known what distribution date Plaintiff now claims she intended. Plaintiff's 1992 distribution request, requesting distribution "as soon as administratively practicable on or after December 18, 1992 (the 'distribution date')," belies Plaintiff's argument that "distribution date" in her 1994 and 1996 requests clearly referred to "the first available distribution date for each plan year [i.e., January 1st]," as opposed merely to the operative date of her distribution requests. The context of "distribution date" in Plaintiff's distribution requests further undermines Plaintiff's position. For example, in 1992 Plaintiff requested distribution "as soon as administratively practicable on or after December 18, 1992 (the "distribution date"), in the form I hereby elect. I understand that my election is revocable until the distribution date . . . ." (emphasis added). Except for requesting distribution on December 31 instead of December 18, Plaintiff's 1994 and 1996 requests contain this exact same language. Contrary to Plaintiff's contention, "distribution date" likely refers only to the operative date of Plaintiff's requested distribution. Such use is consistent with Plaintiff's

10

1  election under 6.03.  *See supra* footnote 5.  Furthermore, insofar as Plaintiff maintains that
2  Defendants should have second-guessed her election, "ERISA does not impose a general duty
3  requiring ERISA fiduciaries to ascertain on an individual basis whether each beneficiary
4  understands the collateral consequences of his or her particular election."  *Griggs v. E.I. Dupont de*
5  *Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001); *see also Watson v. Deaconess Waltham Hosp.*,
6  298 F.3d 102, 115 (1st Cir. 2002) ("[F]iduciaries need not generally provide individualized
7  unsolicited advice.").  Therefore, Defendants did not abuse their discretion with regard to Plaintiff's
8  distributions in 1992, 1994, and 1996.

9  Plaintiff is not entitled to additional benefits relative to her distributions in 1998 or 1999.
10 Defendants distributed Plaintiff's requested benefits prior to her requested distribution date in those
11 years [December 31].  Plaintiff argues that she is entitled to recalculation of benefits because the
12 "Trustee failed to follow the Plan terms and failed to follow the unambiguous directions of Mrs.
13 Feikes regarding the 1992-2000 distributions."  Plaintiff's Claim for Benefits at 3.  Defendants,
14 however, "disagree with [this] general premise because it was Mrs. Feikes who made the
15 distribution request and it was Mrs. Feikes who asked for those distributions to be make as quickly
16 after the request as possible."  Defendants' Denial of Plaintiff's Claim for Benefits at 2.  Even
17 assuming that Defendants abused their discretion by distributing Plaintiff's benefits prior to the
18 operative date of her distribution requests, Plaintiff has failed to establish that she suffered any loss
19 as a result of such early distributions.  *See, e.g.*, *Kerns v. Benefit Trust Life Ins. Co.*, 790 F.Supp.
20 1456, 1462 (E.D. Mo. 1992) ("[F]or plaintiff to recover, plaintiff must show a causal connection
21 between the breach of fiduciary duty and the damages sustained.").

22 Plaintiff's argument assumes that any distribution paid on December 31 would include
23 year-end gains.  Defendants, however, reject this assumption.  The plan merely states that "[f]or the
24 purposes of a distribution under the Plan, the value of a Participant's Accrued Benefit is its value as
25 of the valuation date [December 31] immediately preceding the date of the distribution."  Section
26

11

9.10. It is not unreasonable to interpret this provision to require that distributions made on December 31 be valued as of the previous year's valuation date.  Plaintiff's own expert concedes that under a strict interpretation of plan documents, benefit distributions made on December 31 would not necessarily include year-end gains. *See* Depo. of Bruce Moore at 23:12-24; 32:2-25. Therefore, Plaintiff is not entitled to additional benefits relative to her distributions in 1998 or 1999.

**B. Interest on Periodic Distributions**

Plaintiff argues that she was wrongfully denied five percent interest on distributions made from 1992 through 2000. Section 9.10 of the 1991 Plan states:

> Any distribution (other than a distribution from a segregated account) made to a Participant (or to his Beneficiary) more than 90 days after the most recent valuation date may include interest on the amount of the distribution as an expense of the trust fund. The interest, if any, accrues from such valuation date to the date of the distribution at the rate established in the Employer's Adoption Agreement.

Section 9.10 of the Employer's Adoption Agreement further establishes that "if a distribution (other than a distribution from a segregated account) occurs more than 90 days after the most recent valuation date, the distribution will include interest at 5% per annum." Because Plaintiff's distributions from 1992 through 2000 occurred more than eleven months after the most recent valuation date (December 31 of the year preceding each distribution), and were not distributed from a segregated account, Plaintiff seeks five percent interest on the amount of each distribution between the date of each distribution and December 31 of each previous year.

A beneficiary may bring suit "to recover benefits due to [her] under the terms of [her] plan" or "to enforce [her] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  However, "an ERISA plaintiff 'must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.'" *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620,

12

626 (9th Cir. 2008) (citing *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995)). Although Plaintiff petitioned the Plan for five percent interest relative to her 2001 distribution, Plaintiff did not specifically address her claims for five percent interest on these earlier distributions in either her "Claim for Benefits" or her "Appeal of Denial for Claim for Benefits." Therefore, to survive, Plaintiff's claims for five percent interest on the earlier distributions must satisfy one of the recognized exceptions to the exhaustion requirement. *See Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980).

The Ninth Circuit recognizes general exceptions to the exhaustion requirement in ERISA cases. *Vaught*, 546 F.3d at 626-27. A court should hear a plaintiff's claims despite failure to exhaust an internal claims procedure where "resort to the administrative route is futile or the remedy inadequate" or "where a plan fails to establish or follow 'reasonable' claims procedures as required by ERISA." *Id*. at 627. Section 8.09 of the 1991 Plan establishes an internal claims procedure. Plaintiff followed internal plan procedure in filing both an initial claim and appeal relative to the five percent interest on her 2001 distribution, but failed to file even an initial claim for five percent interest on her earlier distributions. The Plan apparently followed its own internal claims procedure in responding to Plaintiff's other claims. Nothing suggests the inadequacy of an internal remedy. Therefore, Plaintiff's claims are barred under the exhaustion requirement unless exhausting the internal claims procedure would be futile.

A beneficiary seeking determination of rights or benefits under an ERISA plan need not "first exhaust the administrative remedies provided by the plan" where such exhaustion would be futile. *See Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir.1991). In rejecting Plaintiff's Claim and Appeal for five percent interest on her 2001 distribution, Defendants explained that the five percent interest provision could not apply because Plaintiff's 2001 rollover distribution was valued immediately prior to distribution, not more than 90 days before distribution. This explanation does not apply to Plaintiff's annual distributions, except the 1993

13

distribution (or the 1996 distribution as mentioned above), nor does it demonstrate the futility of exhausting internal plan procedures. Defendants' later briefing before this court, however, specifically argues that Plaintiff is not entitled to five percent interest on her annual distributions because the 1991 Plan erroneously included this interest provision and because the Plan had never paid interest on any distribution:

> Although the 1991 Plan . . . provided for payment of interest if the distribution occurs other than from a segregated account, such provision was made in error as individual account plans, such as CSA, do not provide for payment of interest. In fact, the 1991 Plan does not provide for any funding mechanism to pay such interest and such interest simply cannot be paid at the expense of the other participants as expected by Plaintiff.

Reply in Support of Defendants' Motion for Summary Judgment at 11. This later explanation is sufficient to establish futility. *See Horan*, 947 F.2d at 1416 (9th Cir.1991) (waiving the exhaustion requirement where current plan administrator "unequivocally states in its amicus brief that the plaintiffs are not entitled to an annuity under the plan"). Therefore, because Defendants' later representations demonstrate the futility of an internal review, Plaintiff's claims for five percent interest on her annual distributions are not barred by the exhaustion requirement.

Nevada's six-year limitations period bars Plaintiff's claims for interest on distributions prior to 1997. *See* N.R.S. 11.190(1)(b) (2003). As noted above, "[a]n ERISA cause of action accrues either at the time benefits are actually denied or when the [beneficiary] has reason to know that the claim has been denied." *Chuck*, 455 F.3d at 1031. None of Plaintiff's distributions included any interest. Defendants certainly had "reason to know" that she had been denied interest when she received each distribution check without any interest. Because Plaintiff received early distributions prior to 1998, and because Plaintiff brought suit more than six years following each of these distributions, these claims are barred pursuant to Nevada law.

14

1   Defendants abused their discretion by failing to pay five percent interest on Plaintiff's
2   periodic distributions in 1998, 1999, and 2000.  As noted above, "if a distribution (other than a
3   distribution from a segregated account) occurs more than 90 days after the most recent valuation
4   date, the distribution will include interest at 5% per annum."  Employer's Adoption Agreement at
5   Section 9.10.  Plaintiff's distributions were not made from a segregated account.  Defendants claim
6   that "such a provision was made in error" and that "the 1991 Plan does not provide for any funding
7   mechanism to pay such interest . . . ."  The Plan, however, does specify that such interest shall be
8   paid "an expense of the trust fund."  Section 9.10(a).  Furthermore, Defendants' claim that this
9   provision was erroneously included is also unreasonable in this context.  *See Cinelli v. Sec. Pac.*
10  *Corp.*, 61 F.3d 1437, 1444-45 (9th Cir. 1995) ("Those documents contain a clear statement of
11  benefits and it would be inconsistent with the goal of ERISA to allow either the employee or
12  employer to attack that statement on the basis of mistake."); *see also Humphrey v. United Way of*
13  *Texas Gulf Coast,* 590 F. Supp.2d 837, 848 (S.D. Tex. 2008) ("When, as here, the written plan
14  document is unambiguous, the court is bound by the plain meaning of its terms, and reformation
15  based on the unilateral mistake of one party is not appropriate.").  Defendants, accordingly, abused
16  their discretion in disregarding the plan's plain language regarding the payment of five percent
17  interest on Plaintiff's distributions in 1998, 1999, and 2000.

### III. Conclusion

19  THE COURT HEREBY ORDERS that the parties' cross-motions for summary judgment
20  (#61 and #62) are partially reinstated.  These motions are reinstated only as to Plaintiff's claims
21  regarding periodic distributions and interest prior to the 2001 rollover distribution.  All other
22  claims remain denied subject to sua sponte reinstatement as appropriate.
23  THE COURT FURTHER ORDERS that the parties' cross-motions for summary judgment
24  (#61 and #62) are granted in part and denied in part as stated herein.

THE COURT FURTHER ORDERS that this case be scheduled for settlement conference on all remaining claims at the calendar and convenience of the magistrate judge.

THE COURT FURTHER ORDERS that in the event that the parties fail to resolve the remaining issues relative to the 2001 rollover distribution in the settlement conference, the parties shall, within sixty days of such conference, submit briefs limited to addressing which plan governs the 2001 rollover distribution.

DATED this ____ day of November, 2013.

_____
Lloyd D. George
United States District Judge