# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JO ANN FEIKES,

    Plaintiff,

v.

CARDIOVASCULAR SURGERY ASSOCIATES PROFIT SHARING PLAN, TRUST, et al.,

    Defendants.

2:04-cv-1724-LDG-GWF

**ORDER**

Plaintiff Jo Ann Feikes filed this ERISA action to recover benefits allegedly denied by defendants' improper handling and distribution of her share in a profit sharing plan. The parties have filed cross-motions for summary judgment. On November 26, 2013. The court denied in part and granted in part the parties' cross motions for summary judgment as they related to plaintiff's claims associated with early distribution payments and interest on the periodic distributions. The court hereby addresses whether the plan's valuation of plaintiff's distribution was proper.

A.    Standard of Review

Both the 1991 and the 2001 plans give the plan administrator discretionary authority. doc. 37, at 10:1-5; Doc. 61, at 7:16-19. The 2001 plan also gives the plan administrator authority to "determine the amount and kind of benefits to which participants and beneficiaries are entitled under the plan, and to "interpret provisions of the Plan." 2001 Plan at § 61.1. In the absence of a conflict of interest, "the plan administrator's decision can be upheld if it is grounded on any reasonable basis." Montour v. Hartford Life & Accident Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009).

However, if the same entity both pays the benefits and evaluates the claims, there is a "structural conflict of interest" and a more complex analysis is required. Id. A court may give more or less weight to a conflict depending on what the evidence shows. Saffron v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 868 (9th Cir. 2008). A court can "view the conflict with a low level of skepticism if there's not evidence of malice, of self-dealing, or of a parsimonious claims-granting history." Id. However, the court "may weigh the conflict more heavily if there's evidence that the administrator failed adequately to investigate a claims or ask the plaintiff for necessary evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly." Id.

Plaintiff urges that, because of the existence of conflicts of interest and serious procedural abnormalities, the court should conduct a de novo review of the record. While Dr. Daugharthy shared an interest in the assets of the plan, there is no evidence of malice or self-dealing. Plaintiff did not make her request for disbursement until after the 2001 amendment regarding the valuation of the plan was made. And the value to all of the plan's members was decreased because of the negative economic effects of the events of September 11, 2001, not just plaintiff's. Accordingly, the court reviews the administrator's actions under a discretionary standard with somewhat heightened scrutiny to account for the structural conflict of interest.

B.  Cardiovascular Surgery Associates ("CSA") Profit Sharing Plan and Trust's Date of Valuation of Plaintiff's Share

CSA valued plaintiff's distributed share as of the date of distribution on December 31, 2001. Plaintiff asserts that CSA should have gone back to the last valuation of shares as of December 31, 2000, as dictated by the 1991 agreement. Plaintiff attacks the interim valuation, claiming that the 2001 plan was not in existence on December 31, 2001. In August, 2001, CSA considered amending the 1991 plan, and changing the third-party administrator of the plan. In November 2001, CSA determined to proceed with the changes and retained National Retirement

1   Plan Advisors ("NRPA") as its third-party administrator.  Hiring a new third-party administrator
2   required CSA to amend and approve a new plan document, the 2001 plan.  On November 13, 2001,
3   Dr. Daugharthy, in his position as authorized representative and trustee signed an adoption
4   agreement.  The 2001 plan was made effective as of January 1. 2001.

5   Under either the 1991 plan or the 2001 plan, CSA was allowed to amend the plan at
6   anytime so long as the amendment was done in writing and the amendment set forth the date to
7   which the plan was either retroactively or prospectively effective.  So, the ultimate question is
8   whether the amendment to the plan was effective either as the 2001 plan with retroactive effect, or
9   the 1991 plan with prospective effect.  An ERISA administrator abuses its discretion only if it (1)
10  renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts
11  with the plain language of the plan, or (3) relies on clearly erroneous findings of fact.  Boyd v. Bell,
12  410 F.3d 1173, 1178 (9th Cir. 2005).  The administrator's decision will be upheld if "it is based
13  upon a reasonable interpretation of the plan's terms and was made in good faith."  Id.  In this case,
14  the signing of the administrative service agreement with NRPA was not required before the
15  valuation.  The 2001 plan, which was the amendment to the 1991 plan, was in writing and signed
16  by CSA on November 13, 2001.  Furthermore, NRPA began to administer the 2001 plan soon after
17  the amendment of the 1991 plan dated November 13, 2001, but before February 1, 2002, the date
18  on which NRPA actually signed the administrative services contract.

19  The court finds that Dr. Daugharthy and CSA were acting within their discretion when they
20  decided that a valuation as of December 31, 2000, would not have accurately reflected the value of
21  the pooled account at the time plaintiff made her December 19, 2001, rollover distribution.
22  Dr. Daugharthy and CSA determined that, due to unforeseen market conditions, paying plaintiff
23  benefits based on a December 2000 valuation would prejudice the other participants of the plan.
24  Courts have upheld similar decisions to properly allocate losses when plans governed by ERISA
25  experienced drastic losses in divergent market conditions.  See Cator v. Herrgott & Wilson, Inc.,
26

1  609 F. Supp. 12, 15 (N.D. Cal. 2984) (upholding an amendment allowing an interim valuation
2  because "fluctuating market conditions, changing financial conditions, and economic
3  circumstances could result in a windfall to [the plaintiff] at the expense of the [other plan
4  participants").

    Moreover, here Dr. Daugharthy did not retroactivily divest plaintiff of her benefits. Amendments to add an interim valuation date to a plan do not constitute a plan amendment that affects the accrued benefit of a plan participant. Id.  Rather than divest plaintiff of her benefits, the application of the interim valuation fairly distributed the losses that the CSA account has suffered among all participants.  Plaintiff received the benefits she was entitled to, not the inflated amount she hoped to received based on an out-dated valuation.  Plaintiff has not demonstrated a triable issue of fact on the question of whether Dr. Daugharthy abused his discretion by applying a valuation date other than December 31, 2000.

    In sum, CSA met all of the procedural requirements to amend the 1991 plan. The 2001 plan did not constitute an improper retroactive amendment of the plan, the interim valuation was authorized under plan documents, and Dr. Daugharthy was within his discretion to implement it. Furthermore, the court denies plaintiff's challenges to the filing of the administrative record by defendants.  Even though the record contains extraneous material, its content mutual to the parties supports the administrator's decision.  Accordingly,

C.   Conclusion

    THE COURT HEREBY ORDERS the parties' cross-motions for summary judgment (#61 and #62) are partially reinstated.

    THE COURT FURTHER ORDERS that defendants' cross motion for summary judgment (#62) is GRANTED in part, and plaintiff's cross-motion for summary judgment (#61) is DENIED in part as stated herein.

THE COURT FURTHER ORDERS that within 30 days from the date of this order, plaintiff shall file papers regarding the interest on plaintiff's periodic distributions in 1998, 1999, and 2000, as determined by this court's order dated November 26, 2013 (#115). The responsive briefing on the papers shall follow the deadlines provided in the local rules.

DATED this __29th__ day of June, 2016.

_____
Lloyd D. George
United States District Judge