# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Estate of JO ANN FEIKES, et al.,

    Plaintiff,

v.

CARDIOVASCULAR SURGERY ASSOCIATES PROFIT SHARING PLAN, TRUST, et al.,

    Defendants.

2:04-cv-1724-LDG-GWF

**ORDER**

The Court previously granted in part and denied in part plaintiff Jo Ann Feikes' cross-motion for summary judgment (ECF No. 62). The Court granted the motion to the extent of determining that the plaintiff was entitled to the payment of five percent interest on the distributions for the years 1998, 1999, and 2000, from the date of the most recent valuation until the date of distribution. The Court subsequently ordered the plaintiff to file papers, and the defendant to file responsive papers, regarding the interest on plaintiff's periodic distributions for the years 1998, 1998, and 2000. The parties have done so. (ECF Nos. 141, 144, and 145). The Court now finds that the defendants paid the five percent interest accrued between the relevant dates of the most recent valuations and the date of the distributions, but did so in an untimely manner. Accordingly, the plaintiff is entitled to prejudgment and postjudgment interest at the average 52-week Treasury bill rate, per 28 U.S.C. § 1961, to correct the original lapse in timely payment of the five percent interest from the time of the original distribution to the time that plaintiff was paid the five percent interest.

## I. Background

This Court found that the 1991 CSA Plan governs Feikes' periodic distributions from 1992 to 2000. (ECF No. 138). Under Section 9.10 of the 1991 CSA Plan, "if a distribution (other than a distribution from a segregated account) occurs more than 90 days after the most recent valuation date, the distribution will include interest at 5 percent per annum." (ECF No. 115). Feikes received her distributions more than eleven months after the most recent valuation (December 31 of the year preceding each distribution), triggering Section 9.10 of the 1991 CSA Plan. This Court found that Section 9.10 applies to Feikes' 1998, 1999, and 2000 periodic distributions because the distributions occurred more than eleven months after the most recent valuation and were not from a segregated account. *Id.*

During the pendency of this case, on December 15, 2006, the defendants credited Feikes' Plan account and adjusted it to reflect a payment of the five percent interest required by §9.10 that had accrued between the date of the most recent valuation and the date of the distribution for her distributions for the years 1998, 1999, and 2000. The defendants, under a new third-party administrator, credited the following amounts to Feikes:

Interest Payments Made from the CSA Plan to Feikes
on December 15, 2006

| Distribution Period | Original Distribution Amount | 5% Annual Interest on Original Distribution Amount Per Section 9.10 |
|---|---|---|
| 1/1/98 - 12/31/98 | $200,000 | $10,000 |
| 1/1/99 - 12/31/99 | $250,000 | $12,500 |
| 1/1/00 - 12/31/00 | $100,000 | $5,000 |

The defendants argue that, because of these payments, they have already met and exceeded Feikes' claims to interest on her periodic distributions in 1998, 1999, and 2000.

Feikes argues that she should receive interest on the unpaid five percent interest, as the defendants did not pay the five percent interest payments in a timely manner, but did so belatedly on December 15, 2006.

Feikes originally alleged claims for: corrective distribution; breach of fiduciary duty; interest on annual partial distributions; protected benefits under ERISA; statutory penalties under ERISA; breach of fiduciary responsibility; de novo review. The Court denied the majority of Feikes' claims. (ECF No. 115). The Court only reinstated Feikes' claims regarding periodic distributions and interest prior to 2001. *Id*. Applying the abuse of discretion standard, this Court determined that the defendants abused their discretion by failing to timely pay five percent interest on Feikes' periodic distributions from 1998, 1999, and 2000. *Id*. In order to determine the total award of interest resulting from the failure to timely pay the five percent interest pursuant to §9.10, the Court ordered the parties to file motions regarding the interest owed by the defendants, if any, regarding the periodic distributions from 1998, 1999, and 2000. (ECF No. 138).

## II. Analysis

As a threshold matter, the Court must determine whether Feikes' claim for prejudgment interest is barred by ERISA's statute of limitations or exhaustion requirement. Based on this Court's prior ruling, Feikes' claim is not barred by either. Based on the following reasons, the defendants must pay Feikes prejudgment interest at the average 52-week Treasury bill rate, per 28 U.S.C. § 1961, to correct the lapse in payment.

**A. Procedural Arguments**

The defendants argue that Feikes' claim to prejudgment interest is barred because she did not raise a claim for interest until July 19, 2016, when the plaintiff filed a brief regarding interest calculations, and because she failed to appeal via the plan's internal procedures.

However, this Court previously ruled that Feikes' claims for interest on distributions from 1998, 1999, and 2000 are neither barred by the relevant statute of limitations, nor ERISA's exhaustion requirement. The claim for prejudgment interest is ancillary to the claim for five percent interest on the distributions from 1998, 1999, and 2000, and therefore is not barred. Moreover, Feikes raised a claim for prejudgment interest in her complaint's prayer for relief, filed in 2004, in addition to raising claims for lost interest at five percent in her complaint and cross-motion for summary judgment. (Compl. ¶ 244.6, ECF No.1) (requesting "prejudgment interest" and "such other and further relief as the Court may deem proper"); *see also* (Compl. ¶ 24, ECF No.1 ) (stating that "[n]one of the distributions Jo Ann Feikes received from the CSA Plan during the period of 1992 through 2000 included interest at the rate of 5% per annum"); (Compl. ¶ 28, ECF No.1) (stating that "[n]one of the distributions the CSA Plan made more than ninety days after an accounting date to any former employee-participant or to a beneficiary during the period of 1991 through 2001 included interest at the rate of 5% per annum").

Based on the Court's previous order, Feikes' claim to prejudgment interest for the untimely payment of five percent interest pursuant to §9.10 on distributions made for the years 1998, 1999, and 2000 is neither barred by the relevant statute of limitations nor ERISA's exhaustion requirement.

**B. Prejudgment Interest Arguments**

The defendants argue that Feikes has already been made whole when it credited her CSA Plan account with the five percent interest on December 15, 2006. The defendants therefore assert that awarding Feikes additional interest would result in punitive damages to the CSA Plan, violating ERISA.

Under ERISA, the trial court may use its discretion in determining whether to award prejudgment interest. *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d

4

620, 627-28 (9th Cir. 2007). *See, e.g.*, *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971) (finding that "[w]hether interest will be awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities"); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163-64 (9th Cir.2001) (affirming the trial court's decision to award 4.91 percent, rather than 10 percent, prejudgment interest to an ERISA claimant). All circuits agree that prejudgment interest is a remedy available under ERISA that prevents the unjust enrichment of a benefit plan. Michael D. Grabhorn, *ERISA & Prejudgment Interest: Calculating Interest in the Wake of Rybarczyk*, 41 BRANDEIS L.J. 659, 659 (2003). *See also Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992) ("[a]wards of prejudgment interest are compensatory, not punitive"); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir.1992) (finding that prejudgment interest "must be made with an eye toward putting the plan in the position it would have occupied but for the breach"). Prejudgment interest should be awarded when the harm occurred. *See Columbia Brick Works, Inc. v. Royal Insurance Co.*, 768 F.2d 1066, 1071 (9th Cir.1985) (confirming the district court's decision to calculate prejudgment interest using the Treasury bill rate on the date of delivery).

This Court grants the plaintiff prejudgment interest in order to place her in the same position she would have been in had the defendants timely paid the five percent interest payment. The defendants had an obligation to pay the plaintiff five percent interest for the periodic distributions for the years 1998, 1999, and 2000, because each of the distributions occurred more than 90 days after the most recent valuation. The Court finds that the defendants had a duty to pay that five percent interest to Feikes at the time of the respective distribution. The defendants did not, however, pay Feikes the five percent interest at the time it paid the distribution. Rather, the defendants waited until December 15, 2006, to pay the five percent interest earned between the most

5

recent valuation and the date of the distribution. Such payment was untimely and deprived Feikes of the use of the five percent interest from the respective date of each distribution through December 15, 2006. Accordingly, an award of prejudgment interest is compensatory, rather than punitive.

**C. Interest Rate Arguments**

The Court must next determine what interest rate to apply. Feikes offers three alternative interest rates: 1) 12 percent under state statute (N.R.S. § 99.040(1)); 2) the Treasury bill rate as of the last day of the year following the valuation year; or 3) five percent pursuant to Section 9.10 of the CSA plan. The Court finds that, pursuant to 28 U.S.C. §1961, and for each calendar year, the defendants must pay Feikes prejudgment interest at the average 52-week Treasury bill rate applicable to that calendar year subsequent to the initial untimely payment of the five percent interest.

1. Treasury Bill Rate

Under 28 U.S.C. § 1961(a), the district court "shall be allowed on any money judgment in a civil case" to award interest. 28 U.S.C.A. § 1961(a)(West). The court should calculate interest "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." *Id*. "Interest shall be computed daily to the date of payment ... and shall be compounded annually." 28 U.S.C.A. § 1961(b)(West). *See Murphy v. City of Elko*, 976 F. Supp. 1359 (D. Nev. 1997) (stating that "federal law governed prejudgment interest rate, and [the] rate would be compounded annually" and "[w]e see no principled reason not to similarly compute prejudgment interest in accordance with federal law, and we think the Ninth Circuit would so conclude as well").

The district court may use the Treasury rate for both prejudgment and postjudgment interest, "unless the trial judge finds, on substantial evidence, that the

equities of that particular case require a different rate." *Blankenship*, 486 F.3d at 628 (quoting *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir.1984)). If the trial court chooses to not use the Treasury bill rate, then it must provide a reasoned justification based upon substantial evidence. *Blanton v. Anzalone*, 813 F.2d 1574, 1574-75 (9th Cir. 1987) (holding in an ERISA case "any departure from [the] Treasury bill rate in calculating prejudgment interest must be accompanied by reasoned justification"). *See also Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir.2001) (reversing the trial court's award of 16 percent prejudgment interest to an ERISA claimant because the court "did not justify its selection of the prejudgment interest rate" based on what it thought the claimant earned); *Perryman v. Provident Life & Accident Ins. Co.*, 690 F. Supp. 2d 917, 956 (D. Ariz. 2010) (deciding to award prejudgment interest at the rate prescribed by 28 U.S.C. § 1961, rather than Arizona statute).

Prejudgment interest is "intended to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment." *Nelson v. EG & G Energy Measurements Grp.*, Inc., 37 F.3d 1384, 1391 (9th Cir. 1994). In *Nelson v. EG &G*, the district court used the average 52-week Treasury bill rate for each calendar year as if the plaintiffs invested the funds that year, rather than the Treasury bill rate as determined immediately prior to judgment. *Id.* at 1391-92 (explaining that "[i]t is the Treasury bill rate during this interim that is pertinent, not the Treasury bill rate at the time of judgment").

The Court holds that the prejudgment interest rate that would reasonably, and conservatively, compensate Feikes for each year is the average 52-week Treasury bill rate immediately prior to the commencement of that year. *See Nelson*, 37 F.3d at 1392 (affirming the district court's calculation of prejudgment interest for ERISA benefits using an average 52-week Treasury bill rate because it "reasonably reflects the conservative

7

investment income the plaintiffs would have been able to have earned had they received the funds"). Feikes does not indicate in the record that she would have invested the unpaid five percent interest from the 1998, 1999, and 2000 distributions at a substantially higher market rate. Nor does the language in Section 9.10 of the 1991 CSA plan indicate that the five percent rate be applied to prejudgment interest.

The Court notes that the distribution dates for the years 1998, 1999, and 2000, occurred on December 31. As such, the first date on which prejudgment interest began to accrue on the unpaid five percent interest payment was, respectively, December 31, 1998; December 31, 1999; and December 31, 2000. Accordingly, the Court holds that, for the first calendar year subsequent to these distributions, the defendants must pay Feikes prejudgment interest on the unpaid five percent interest at "the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to" the distribution (hereinafter, the Treasury bill rate). 28 U.S.C. § 1961. For each subsequent calendar year, the prejudgment interest rate is to be similarly determined, but by reference to the Treasury bill rate of the preceding calendar year. Further, consistent with 28 U.S.C. §1961, this prejudgment interest is to be compounded annually on December 31. Finally, the calculation of prejudgment interest accrued and owed by the defendants must reflect the payment of the five percent interest on December 15, 2006.

**D. An Illustrative, Hypothetical Prejudgment Interest Calculation**

The chart below illustrates, as an hypothetical, the Court's intent in the calculation of prejudgment interest for the five percent interest payment that was not paid at the time of the 1998 distribution, but was paid on December 15, 2006. For purposes of this illustrative calculation, the Court has assumed that the Treasury bill rate immediately prior to the December 31, 1998, distribution was 4%. The Court has further assumed

8

that interest applicable during calendar year 2000, which would be the last Treasury bill rate for 1999, was 3.5%. For simplicity, the Court has assumed that, for each of the calendar years 2001-2006, the last Treasury bill rate for the preceding calendar year was 3%. Similarly, for simplicity, the Court has assumed that, for each of the calendar years 2007-2017, the last Treasury bill rates for each of the prior calendar years was 2%.

The Court is well aware that the historical average Treasury bill rates for each calendar year will be unique. The plaintiff must establish this historical average Treasury bill rate (that is, "the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to" the end of each calendar year). The plaintiff must further perform and submit this prejudgment interest calculation for each of the 1998, 1999, and 2000 distributions, using the appropriate Treasury bill rate for each calendar year. To assist the Court, the plaintiff must also provide the daily rate at which prejudgment interest is to be computed for calendar year 2017.

Hypothetical Illustration of the Prejudgment Interest Due on unpaid five percent interest due on December 31, 1998.

| Date | Description | Interest Accrued | Balance |
| --- | --- | --- | --- |
| 12/31/1998 | 5% interest per annum on $200,000 from most recent valuation (12/31/1997) to date of distribution (12/31/1998) | $10,000 | $10,000 |
| 12/31/1999 | Assuming Treasury Bill Rate at the end of 1998 was 4%, total Prejudgment Interest accrued on $10,000 through 12/31/1999. | $400 | $10,400 |
| 12/31/2000 | Assuming Treasury Bill Rate at the end of 1999 was 3.5%, and compounding annually on December 31, 1999, total Prejudgment Interest accrued through 12/31/2000. | $364 | $10,764 |

| | | | |
|---|---|---|---|
| 12/31/2001 - 12/31/2005 | Assuming Treasury Bill Rate at end of each preceding calendar year was 3%, total Prejudgment Interest accrued through 12/31/2005. | $1,714.43 | $12,478.43 |
| 12/15/2006 | Assuming Treasury Bill Rate at end of 2005 was 3%, total Prejudgment Interest accrued through 12/15/2006, as interest is to be calculated daily per §1961. | $357.94 | $12,836.37 |
| 12/15/2006 | Payment Credited to Mrs. Feikes' Plan Account | ($10,000) | $2,836.37 |
| 12/31/2006 | Assuming Treasury Bill Rate at end of 2005 was 3%, total Prejudgment Interest accrued on $2,836.37 from 12/15/2006 through 12/31/2006. | $3.73 | $2,840.10 |
| 12/31/2007 - 12/31/2016 | Assuming Treasury Bill Rate at end of each preceding calendar year was 2%, total Prejudgment Interest accrued (when compounded annually on December 31) during 2007-2016. | $621.97 | $3,462.07 |
| 9/30/2017 | Assuming Treasury Bill Rate at end of 2016 was 2%, and assuming final judgment is entered on 9/30/2017, total Prejudgment Interest accrued through 9/30/2017 on $3,462.07 | $51.79 | $3,513.86 |

Given the Court's assumptions regarding the applicable Treasury bill rates, this illustrative calculation indicates that defendants would be required to pay prejudgement interest to Feikes in the amount of $3,513.86 for the failure to timely pay the five percent interest at the time of the 1998 distribution. The plaintiff must similarly calculate the prejudgment interest that would accrue for failure to timely pay the five percent interest owed for the 1999 and 2000 distributions.

**D. Postjudgment Interest**

Once the court issues a judgment upon an award, postjudgment interest is mandatory under 28 U.S.C. § 1961. 28 U.S.C.A. § 1961(a)(West); *Perkins v. Standard Oil Co.*, 487 F.2d 672, 675 (9th Cir.1973) ("once a judgment is obtained, interest thereon

is mandatory without regard to the elements of which that judgment is composed"). *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (finding that "under the provisions of 28 U.S.C. § 1961, postjudgment interest on a district court judgment is mandatory"). Trial courts may apply postjudgment interest to an award of prejudgment interest. *Id.* at 291 (holding that "postjudgment interest under 28 U.S.C. § 1961 applies to the prejudgment interest component of a monetary award" and that 28 U.S.C. § 1961 "appears to mandate this result").

Because Mrs. Feikes is entitled to prejudgment interest, she is also entitled to postjudgment interest as of the date that judgment is entered until paid. 28 U.S.C.A. § 1961(a); Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.; Fed. R. Civ. P. 54. Under 28 U.S.C. § 1961, the Court will award Mrs. Feikes postjudgment interest on her total prejudgment interest award, compounded annually, at the average 52-week Treasury bill rate from the calendar week preceding the judgment. Accordingly,

THE COURT **ORDERS** that, consistent with this order, plaintiff must submit a calculation of pre-judgment interest accrued on the untimely payments of the five percent interest for each of the 1998, 1999, and 2000 distributions not later than Friday, August 25, 2017. Defendants may file, not later than Friday, September 8, 2017, a response objecting to the plaintiff's calculation, including whether the plaintiff has used accurate historical Treasury bill rates for each calendar year. The plaintiff may file a reply not later than Friday, September 15, 2017.

DATED this \_\_\_4\_\_\_ day of August, 2017.

_____
Lloyd D. George
United States District Judge

11